**Shirley STROMAN, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION, Defendant.**

Civil Action No. 96–2369(JR).

United States District Court, District of Columbia.

May 23, 1997.

Alan Banov, Washington, DC, for Plaintiff.

Robert C. Bernius, Deborah Tarasevich, Nixon, Hargrave, Devans & Doyle L.L.P., Washington, DC, for Defendant.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiff, an African American female, was fired from her job as a consultant at Blue Cross and Blue Shield Association ("BCBSA") on September 30, 1995. In this, her second suit stemming from her treatment at BCBSA, plaintiff initially alleged race discrimination and reprisal claims under both Title VII and the D.C. Human Rights Act ("DCHRA") as well as a handicap discrimination claim under the DCHRA. She then withdrew her claims of race discrimination (Counts I and II), but continued to allege, in support of her remaining three claims, that defendant failed to accommodate her disability and wrongfully terminated her. Defendant has moved for summary judgment as to all three counts. This memorandum sets forth the reasons why that motion must be granted.

### A. Res Judicata

In plaintiff's first lawsuit against BCBSA ("*Stroman I*"), filed December 27, 1994, she alleged discrimination and retaliation based on race, sex, and age. The complaint alleged that plaintiff was denied promotion and subjected to a hostile work environment, and further alleged that the discriminatory treatment caused her private physician to place her on "sickness disability" for thirty days. *Stroman I* Complaint at ¶ 28. The relief demanded by plaintiff included long-term disability benefit pay. The allegations of *Stroman I* covered events at BCBSA from 1992 to 1994. I granted defendant's motion for

summary judgment in *Stroman I* on November 22, 1995.

■ Claims that are based on transactions or occurrences that were the subject of previous litigation and that have been or *could have been* litigated in the previous suit are barred by res judicata. *See Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C.Cir. 1981); 18 LAWRENCE B. SOLUM, MOORE'S FEDERAL PRACTICE § 131.10[3][c] (1997). To determine whether a claim is based on the "same transactions or occurrences," the courts in this circuit consider "whether the facts [in the two proceedings] are related in time, space, origin, or motivation, whether the claims form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *U.S. Indus. Inc. v. Blake Construction Co.,* 765 F.2d 195, 205 (D.C.Cir.1985) (quoting the RESTATEMENT (SECOND) OF JUDGMENTS § 23(2) (1982)).

Two occurrences form the basis for plaintiff's claims in this suit: 1) defendant's failure to reassign plaintiff within BCBSA and 2) plaintiff's termination on September 30, 1995.

■ Res judicata precludes plaintiff's claim of failure to reassign. Plaintiff was aware in 1994, long before the dismissal of *Stroman I,* that BCBSA wanted plaintiff to return to her old job and that no similar position was open for her reassignment at BCBSA. Pl. Opp. to Mot. for Summ. J. at 8–14; Pl. Ex. 34 at ¶ 11, 12, & 14 (Herbert Stroman Affidavit); Def. Ex. 5–8, 12. Defendant's refusal to reassign plaintiff to a new job was closely related in both time and subject matter to the allegations underlying *Stroman I,* and plaintiff's claim based on that refusal therefore arises from the same transactions or occurrences.

■ Plaintiff's termination is another matter. Although arguably not a new event but only the inevitable consequence of earlier ones, it is distinct enough from the transactions and occurrences that formed the basis

of *Stroman I* that res judicata will not be applied to it.

## B. Statute of Limitations

■ A one-year statute of limitations applies to plaintiff's DCHRA claims (Counts IV and V), which were filed on September 30, 1996. D.C.Code § 1–2544(a). Formal notice to plaintiff that her employment had been terminated was mailed on October 5, 1995, and applied retroactively to September 30, 1995. Plaintiff's suit is therefore timely, notwithstanding defendant's assertion that plaintiff was put on notice of the termination by a letter dated August 11, 1995. That letter only advised plaintiff that her employment would be considered voluntarily terminated if she did not respond by August 31, 1995, and plaintiff responded that she was not voluntarily terminating her employment.

## C. Handicap Discrimination Claim

■ Plaintiff has no "disability" as defined by the DCHRA. A disability is a "physical or mental impairment that substantially limits one or more of the major life activities of an individual...." § 1–2502(5A). "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[1] Plaintiff alleges only that she was unable to perform her job at BCBSA and that she was limited from doing some household chores.[2]

■ Plaintiff was not precluded by her claimed disability from working generally, 29 C.F.R. § 1630.2(j)(3)(i), and her alleged inability to perform a *particular* job or work for a *particular* supervisor will not, without more, qualify her as disabled. *Weiler v. Household Finance Corp.,* 101 F.3d 519, 524–525 (7th Cir.1996). Plaintiff sought another job as early as February 28, 1994 and worked at Strayer College for a few months

---

1. The DCHRA incorporates by reference the regulations promulgated by the Equal Employment Opportunity Commission under the Americans with Disabilities Act. *See* D.C. Mun. Regs. tit. 4, § 513.1 (March 1995).

2. Plaintiff has excelled in her pursuit of learning since leaving BCBSA: she received straight A's at Trinity College, graduated summa cum laude, and was inducted into Phi Beta Kappa. Def. Ex. 1 at 28–29, 34–35.

in 1994. Def. Ex. 1 at 36–38, 74–75. Since January 1995, plaintiff has worked at the Pension Benefit Guaranty Corporation with duties similar to those of her job at BCBSA. Def. Ex. 1 at 69, 82–84. Her employer describes her performance as "outstanding." Def. Ex. 18.

 Plaintiff's allegation that she had problems performing minor household chores does not by itself establish a substantial limitations on major life activities. *See Parzych v. Hart Schaffner & Marx*, 1997 WL 94732, 1997 U.S. Dist. LEXIS 2310, at *16 (N.D.Ill. Feb. 28, 1997).

Plaintiff insists that her success both in college and in her new job are the result of reasonable accommodations by her employer and professors, but she provides no evidence of what those accommodations have been, other than to say that she was provided a "supportive" environment. Pl. Ex. 4 at 161.

Mrs. Stroman has failed to identify "pleadings, depositions, answers to interrogatories ... or affidavits" that would establish her disability under the statute. F.R.Civ.P. 56. There is no genuine issue of fact material to the question of whether Mrs. Stroman has a disability under the DCHRA, and defendant is entitled to a judgment as a matter of law.

### D. Reprisal Claim

 Plaintiff's filing of *Stroman I* and her various EEO complaints were protected activity known to her supervisors at Blue Cross. Her termination was adverse action. The requisite causal connection "may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985). The termination in this case occurred in close enough proximity to plaintiff's protected activity to raise a permissible inference of causation.

Defendant, however, has proffered the persuasive non-discriminatory explanation that plaintiff abandoned her job, and refused to return, long before the formal termination letter was sent. Mrs. Stroman, now employed full-time with Pension Benefit Guar-

anty Corporation, points to nothing in the record to rebut that explanation. No reasonable jury could conclude that Mrs. Stroman's protected activity was the cause of the BCBSA letter to her making "official" what had long been a fact.

An order granting defendant's motion for summary judgment accompanies this memorandum.

### ORDER

Having considered the defendant's motion for summary judgment, the opposition thereto, the oral arguments, and the entire record, it is this 23rd day of May, 1997.

**ORDERED** that the motion for summary judgment [# 13] is **granted.** It is

**FURTHER ORDERED** that this case is dismissed.